**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dondi M. Wengraf, | No. CV-23-01853-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Dondi M. Wengraf's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 10, "Pl. Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 14, "Def. Br."), and Plaintiff's Reply (Doc. 15). The Court has reviewed the briefs and Administrative Record (Docs. 8–9, "R.") and now reverses the Administrative Law Judge's decision (R. at 14–24) as upheld by the Appeals Council (R. at 1–3).

**I.   BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on August 10, 2020, for a period of disability beginning June 19, 2020. (R. at 14.) Plaintiff's claim was initially denied on December 12, 2020, and upon reconsideration on August 12, 2021. (R. at 14.) Plaintiff then testified at a hearing before an Administrative Law Judge ("ALJ") on

1  May 27, 2022. (R. at 107–48.) On July 29, 2022, the ALJ denied Plaintiff's Application.
2  (R. at 14–24.) On June 29, 2023, the Appeals Council denied a request for review of the
3  ALJ's decision. (R. at 1–3.) On September 1, 2023, Plaintiff filed this action seeking
4  judicial review.

5        The Court has reviewed the medical evidence in its entirety and finds it unnecessary
6  to provide a complete summary here. The pertinent medical evidence will be discussed in
7  addressing the issues raised by the parties. In short, upon considering the medical records
8  and opinions, the ALJ found that Plaintiff has the following severe impairments: lumbar
9  and thoracic degenerative disc disease and spondylosis, palmar fascial
10 fibromatosis/Dupuytren's contracture, osteoarthritis of the hand, bursitis of the left hip, and
11 obesity. (R. at 18.)

12       The ALJ also explained that Plaintiff had previously filed a disability application
13 that was ultimately denied by the ALJ in 2020. (R. at 15, 211–24, 235–49.) This created a
14 presumption of continuing nondisability. (R. at 15.) But the ALJ found that Plaintiff had
15 rebutted that presumption because she now had evidence of new or worsened impairments.
16 (R. at 15.) Nevertheless, the ALJ adopted Plaintiff's previous residual functional capacity
17 ("RFC") after concluding that the new evidence did not support a different RFC. (R. at 15.)
18 In doing so, the ALJ engaged in the traditional five step analysis. (R. at 15–24.)

19       The ALJ determined that Plaintiff "did not have an impairment or combination of
20 impairments that met or medically equaled the severity of one of the listed impairments in
21 20 CFR Part 404." (R. at 19.) The ALJ then found that Plaintiff had the RFC to perform
22 sedentary work with certain limitations, including that she could stand/walk for only thirty
23 minutes at a time. (R. at 20.) The ALJ declined to assess any limitations on handing or
24 fingering. (R. at 21–22.) Based on a vocational expert's answers to hypothetical questions,
25 the ALJ concluded that Plaintiff could perform past relevant work as an administrative
26 assistant or a fingerprint clerk II and is not disabled under the Act. (R. at 23–24.)

27
28

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant can still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the

inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

### A. Adoption of the Previous RFC

As an initial matter, the Court will address Plaintiff's argument that the ALJ erred in adopting the prior RFC. (Pl. Br. at 11.) "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). A "claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Id.* (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). If the claimant rebuts the presumption, the ALJ must give effect to a prior RFC "unless there is new and material evidence" relating to the RFC determination. SSAR 97-4(9), 1997 WL 742758, at *3 (Dec. 3, 1997).

Here, the ALJ found that Plaintiff overcame the presumption because "there is new evidence related to the claimant's [RFC]," but the ALJ also found that "the evidence is not material as it does not support a change in the claimant's [RFC]." (R. at 15.) The ALJ then stated, "[T]he undersigned adopts the prior [RFC] and past relevant work finding as discussed in greater detail below," and proceeded to conduct a traditional five step analysis of the new evidence before ultimately reaching the RFC determination. (R. at 15–20.)

Plaintiff argues that the ALJ erred in adopting the prior RFC under the res judicata standard. (Pl. Br. at 11.) But while the ALJ set forth the res judicata standard and stated that she adopted the prior RFC, the ALJ did not actually apply res judicata. Instead, the ALJ stated that her reasons for adopting the prior RFC were "discussed in greater detail" in her full five step analysis. In essence, the ALJ's discussion of the res judicata standard "was inconsequential because it did not end or control her evaluation of Plaintiff's claim." *Arnott*

*v. Comm'r of Soc. Sec. Admin.*, No. CV-21-08205-PCT-DJH, 2023 WL 2734477, at *4 (D. Ariz. Mar. 31, 2023). Therefore, although Plaintiff advances several arguments to show that the ALJ erred in applying res judicata, the Court will consider these arguments as challenges to the substance of the ALJ's analysis instead.

In sum, Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erred by rejecting the medical opinion of an agency consultative examiner, (2) the ALJ erred by rejecting the assessments of Plaintiff's treating physician without providing sufficient explanation supported by substantial evidence, and (3) the ALJ erred by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons.[1] (Pl. Br. at 15, 17, 20.)

**B.     The Medical Opinions of the Agency Consultative Examiner and Plaintiff's Treating Physician**

The Ninth Circuit no longer accords special deference to a treating or examining physician. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(b)(2), (c).

---

[1] Plaintiff briefed the first of these issues only as it relates to res judicata, but she briefed the latter two issues both in her res judicata section and as independent issues. The Court will consider all the arguments Plaintiff raises regarding the latter two issues, regardless of the section of her brief in which Plaintiff raises the arguments.

- 5 -

Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F.4th at 790. Nonetheless, in rejecting a treating or examining doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, and 'explain how [he] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)).

### 1.     The Medical Opinion of the Agency Consultative Examiner

Plaintiff argues that the ALJ erred by disregarding the increased impact of Plaintiff's chronic pain on her mental health, as addressed by the agency's consultative examiner, Dr. M. David McGady. (Pl Br. at 15.) Dr. McGady evaluated Plaintiff in November 2020. (R. at 1579.) He reported that Plaintiff could understand, learn, and carry out only one to two step instructions and sustain concentration, pace, and persistence for only simple tasks. (R. at 1586.) The ALJ found Dr. McGady's opinion "less persuasive" because it was unsupported by his examination of Plaintiff, which revealed normal behavioral observations such as good comprehension and memory, euthymic mood, and objectively normal attention and concentration. (R. at 19.) The ALJ also found Dr. McGady's opinion inconsistent with the overall record, "which shows no formal mental health treatment." (R. at 19.)

Plaintiff argues that the ALJ's rationale is an improper provision of the ALJ's own medical opinion. (Pl. Br. at 15.) For support, Plaintiff cites *Omerasevic v. Commissioner of the Social Security Administration*, in which this Court found that an ALJ erred by stating that "one would expect more significant findings on both the diagnostic imaging and exams as well as more complex treatment" without citing medical opinions explaining what findings and treatment one would expect. No. CV-17-08211-PCT-DMF, ECF No. 29 at 22 (D. Ariz. Jan. 2, 2019). But in that case, the ALJ suggested that the claimant's symptoms of serious spinal degradation must have resolved based on the diagnostic imaging—a

conclusion that clearly requires medical expertise. *See id.* Here, however, the ALJ did not comment on the type of mental health treatment Plaintiff did or did not seek; rather, the ALJ noted that Dr. McGady's opinion is inconsistent with the record in that it shows no formal mental health treatment at all. (R. at 19.)

Moreover, the heart of Plaintiff's argument on this point is that she suffered from chronic physical pain that negatively impacted her mental health, which produced functional impairments. (R. at 16.) However, this is precisely what the ALJ's analysis focused on. After reviewing the record, the ALJ acknowledged that Plaintiff suffers from depression but found that it did not cause more than a minimal limitation on her ability to perform basic work. (R. at 18.) For example, Plaintiff presented in a good mood and was polite, cooperative, and alert. (R. at 18.) Plaintiff also reported to Dr. McGady that she shops in stores weekly and is able to manage her personal care. (R. at 18–19, 1580.) She displayed good short and long term memory at her consultative examination, and she scored 30 out of 30 on her Mini-Mental Status Examination. (R. at 18, 1582–83.) Indeed, Dr. McGady noted that Plaintiff "reported experiencing no impairment in her daily functioning or ability to maintain employment related [to] psychological distress during the current evaluation[;] her primary concern and reason for not working at the current time was physical pain. As such, her prognosis is considered good." (R. at 1584.)

Accordingly, the ALJ evaluated the supportability and consistency factors, and her conclusion discounting Dr. McGady's assessment is supported by substantial evidence.

**2.    The Medical Opinion of Plaintiff's Treating Physician**

Plaintiff also argues that the ALJ erred by rejecting the assessment of her treating physician, Dr. James Corcoran, without providing adequate explanation. The ALJ rejected three specific portions of Dr. Corcoran's opinion: (1) that Plaintiff would be constantly off task, (2) that Plaintiff was significantly limited in her ability to sit, stand, or walk, and (3) that Plaintiff was significantly limited in her ability to use her hands. (R. at 23.)

First, Dr. Corcoran opined that Plaintiff would "constantly" lose concentration due to physical pain. (R. at 1822.) The ALJ found this portion of the assessment unpersuasive

because it is inconsistent with Dr. Corcoran's treatment records indicating that Plaintiff has normal cognitive function. (R. at 23.) Plaintiff's only argument on this point is that the ALJ substituted her medical opinion for Dr. Corcoran's. (Pl. Br. at 19.) But the ALJ did not apply her own medical opinion. Rather, in analyzing the consistency factor, she noted that Dr. Corcoran's own records do not reflect any cognitive difficulties. (R. at 1516, 1519, 1525, 1649, 1778–79.) The Court thus finds that the ALJ did not err on this point.

Dr. Corcoran also reported that Plaintiff could sit, stand, or walk for less than two hours in a workday. (R. at 1820.) The ALJ found this portion of the assessment unpersuasive because it was "not well supported as the provider gave no explanation for [this] assessment . . . . One would expect significantly greater documentation of symptoms and limitations in the medical records to support such extreme limitations." (R. at 23.) Evidently, the ALJ rejected Dr. Corcoran's opinion because he conveyed it via a check-box form without including further written explanation. (R. at 1820.) Plaintiff, however, contends that the ALJ failed to look beyond the form, arguing that the missing support for Dr. Corcoran's assessment can be found in his treatment notes. (Pl. Br. at 19.)

Plaintiff is correct that the form itself need not contain an explanation for support. The Ninth Circuit has previously rejected the ALJ's check-box-form rationale when the forms in question, like the forms here, "did not stand alone: they reflected and were entirely consistent with the hundreds of pages of treatment notes created by [the doctors] in the course of their relationship with [the claimant]." *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014). Dr. Corcoran's records are replete with notes on Plaintiff's back and leg pain (R. at 1515, 1546, 1539–45, 1589–97, 1639, 1641–42, 1676–77, 1775–77, 1792), including some entries that specifically mention Plaintiff's pain increasing when she sits, stands, or walks (R. at 1631, 1790). Thus, the ALJ was not free to discount Dr. Corcoran's check-box assessment solely because the form contained no further explanation on this point. Moreover, although the ALJ stated that one would expect significantly more documentation of these symptoms and limitations in the medical records to support the extreme assessment, the ALJ does not offer any example or explanation as to what more would be expected. (R. at 23.)

Finally, Dr. Corcoran opined that Plaintiff can handle and finger for only five percent of an eight hour workday (R. at 1822.) The ALJ found this portion of the opinion inconsistent with the overall record, stating that there was "minimal documentation of hand impairments" and the "consultative examination show[ed] no difficulty with fine manipulation." (R. at 23.) But just as Dr. Corcoran documented Plaintiff's back and leg pain, his treatment notes contain many reports discussing Plaintiff's hand pain. (R. at 1516, 1598–1610, 1632, 1635, 1639, 1644, 1648, 1778–79.) And although the ALJ noted that the consultative examination showed Plaintiff had no difficulty with fine manipulation, the entire examination lasted no longer than half an hour. (R. at 1730, 1733.) Plaintiff's ability to use her hands and fingers for less than thirty minutes during the consultative examination is not inconsistent with Dr. Corcoran's assessment that Plaintiff cannot use her hands and fingers for more than five percent of a workday.

The ALJ erred because her reasons for discounting Dr. Corcoran's assessment as to Plaintiff's ability to sit, stand, or walk, and to handle or finger, were not supported by substantial evidence. And the error was not harmless because the limitations contained within Dr. Corcoran's assessment are work preclusive. The Court will therefore reverse the ALJ's determination on this ground.

### C.  Plaintiff's Symptom Testimony

Plaintiff also argues that the ALJ erred by rejecting her symptom testimony without providing specific, clear, and convincing reasons. (Pl. Br. at 20.) Although credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because

"pain testimony may establish greater limitations than can medical evidence alone." *Id.* But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.*

Plaintiff testified at the hearing that she experienced daily back, hip, and hand pain. When discussing Plaintiff's testimony about her back pain, the ALJ recited parts of the medical record that indicated normal results. The ALJ mentioned an MRI of Plaintiff's spine that showed mild findings, as well as Plaintiff's ability to stoop, her negative straight leg raise test, and her normal gait. (R. at 21.) The ALJ also described Plaintiff's treatments, which included lumbar radiofrequency ablations and physical therapy. (R. at 21.) Although Plaintiff improved somewhat, she eventually reported worsening back pain and elected to undergo a spinal cord stimulation trial. (R. at 21.) The ALJ acknowledged that the lumbar radiofrequency ablations and the spinal cord stimulation treatments suggested that Plaintiff's back pain affected her functioning, but ultimately the ALJ found that Plaintiff's ability to go shopping and do laundry show that her symptoms are not as disabling as alleged. (R. at 21.) The ALJ also discussed Plaintiff's testimony as to her hip pain. The ALJ noted that Plaintiff had been diagnosed with trochanteric bursitis of the left hip but concluded that Plaintiff's ability to drive and load the dishwasher show that her pain is not disabling. (R. at 21.) Likewise, the ALJ recognized that Plaintiff's Dupuytren's contracture and osteoarthritis affect her ability to use her hands, but she concluded that Plaintiff's ability to drive and grocery shop show that she can still perform sedentary work. The ALJ also alluded to the aforementioned half-hour consultative examination in which Plaintiff showed no difficulty with fine manipulation. (R. at 21.)

Although the ALJ attempted to tie specific portions of the medical record to specific portions of Plaintiff's symptom testimony, those connections were not supported by substantial evidence. For example, the ALJ pointed to Plaintiff's MRI, ability to stoop, negative strait leg raise test, and normal gait to discount testimony of Plaintiff's back pain.

But these results are not mutually exclusive of chronic pain. *See Thomas v. Comm'r of Soc. Sec.*, No. CV-18-04230-PHX-JZB, 2020 WL 1000023, at *7 (D. Ariz. Mar. 2, 2020) ("[T]he ALJ states that a number of medical records 'showed mostly normal gait, strength, tone, and range of motion without tenderness, swelling, or deformity.' But these findings are not mutually exclusive with debilitating pain."). Moreover, the ALJ discredited Plaintiff's aggressive treatment plan because she showed some signs of improvement. But the record reflects that the lumbar radiofrequency ablations became less effective, and the spinal cord stimulation did not help. "The fact that a claimant experienced a brief period of reprieve following treatment does not support a finding that her pain was controlled. Rather, the ALJ must show that the treatment was capable of providing lasting relief." *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016).

Lastly, the ALJ discounted testimony regarding all of Plaintiff's alleged pains on the basis that she could complete some activities of daily living, such as driving, doing laundry, cleaning dishes, and shopping for groceries. (R. at 21.) The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain." *Garrison*, 759 F.3d at 1016. To avoid penalizing claimants for attempting to lead normal lives, the Ninth Circuit has held that "[o]nly if [a claimant's] level of activity were inconsistent with [her] claimed limitations would these activities have any bearing on [her] credibility." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance.").

The circuit courts' concerns are embodied in this administrative decision. Although the ALJ found that Plaintiff could drive, shop, and do laundry, the ALJ did not comment on Plaintiff's testimony that she needs accommodations to perform some of these activities, nor did the ALJ find that Plaintiff could sustain these activities for a substantial part of her

1  day. The ALJ thus cannot rely on these activities to discredit Plaintiff's pain testimony. *See*
2  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]hese physical activities did
3  not consume a *substantial part* of [the claimant's] day. This court has repeatedly asserted
4  that the mere fact that a plaintiff has carried on certain daily living activities, such as
5  grocery shopping, driving a car, or limited walking for exercise, does not in any way detract
6  from her credibility as to her overall disability. One does not need to be 'utterly
7  incapacitated' in order to be disabled.").

8  Because the ALJ failed to provide clear and convincing reasons for discrediting
9  Plaintiff's symptom testimony, the Court finds that the ALJ erred and will reverse the
10 ALJ's decision on this point.

### D. The Credit-as-True Rule

12 Having shown that reversal is warranted, Plaintiff urges the Court to apply the
13 credit-as-true rule. (Pl. Br. at 24–25.) The credit-as-true rule applies only in cases that raise
14 circumstances permitting the Court to depart from the ordinary remand rule under which
15 the case is remanded for additional investigation or explanation. *Treichler*, 775 F.3d at
16 1099–1102. These circumstances arise when three elements are present. First, the ALJ must
17 have failed to provide legally sufficient reasons for rejecting evidence. *Id.* at 1100. Second,
18 the record must be fully developed, there must be no outstanding issues that must be
19 resolved before a determination of disability can be made, and the Court must find that
20 further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings
21 are considered useful when there are conflicts and ambiguities that must be resolved. *Id.*
22 Third, if the above elements are met, the Court may "find[] the relevant testimony credible
23 as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not
24 the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

25 The Court finds that the credit-as-true rule applies in this case. First, as discussed
26 above, the ALJ failed to provide legally sufficient reasons for rejecting key portions of
27 Dr. Corcoran's medical opinion. The ALJ also improperly discredited Plaintiff's symptom
28 testimony. Next, the record is fully and extensively developed, such that further

proceedings would be unproductive. Finally, if the improperly discredited evidence were credited as true, particularly the evidence pertaining to Plaintiff's hand impairments, the ALJ would be required to find that Plaintiff is disabled. (R. at 145.) It is therefore unnecessary to remand for further administrative proceedings, and the Court will instead remand for a calculation and entry of benefits.

**IT IS THEREFORE ORDERED** reversing the Administrative Law Judge's decision (R. at 14–24), as upheld by the Appeals Council (R. at 1–3).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment accordingly and close this case.

Dated this 27th day of August, 2024.

Honorable John J. Tuchi
United States District Judge